UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HENDRICK BICKHAM                                     CIVIL ACTION

VERSUS                                               NO. 05-6049

JAMES MILLER  ET AL.                                 SECTION "J" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Hendrick Bickham, is a prisoner currently incarcerated in the David Wade Correctional Center ("Wade") in Homer, Louisiana.  Plaintiff's pro se and in forma pauperis complaint pursuant to 42 U.S.C. § 1983, originally filed in the United States District Court for the Western District of Louisiana, was transferred to this court and received on November 22, 2005.  Record Doc. No. 1.

The defendants are Warden James Miller of the Washington Correctional Institute ("WCI"), Captain Troy and Lt. Blanchard Day of the Hunt Correctional Center, in their individual capacities only, and an unidentified insurance company.  Plaintiff alleges in his complaint that, while incarcerated in WCI in August 2005, he fell when a defective chair in which he was sitting collapsed, and that he received inadequate medical care for injuries to his back, neck and shoulder.  He seeks compensatory and punitive damages and injunctive relief under Section 1983 and state tort law.  Record Doc. No. 1 (Attachment to complaint at ¶¶ IV, V).

On March 21, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Jennifer Medley, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

Shortly before the telephone conference, defendants filed a motion to dismiss, arguing that plaintiff's suit against them is barred by Eleventh Amendment immunity and qualified immunity. Record Doc. No. 13. Plaintiff was given an opportunity to respond in writing. Although he stated in his response that he never received defendants' motion, Record Doc. No. 15, Bickham's testimony sufficiently explains the nature and basis of his claims and has been considered in opposition to the motion.

Having considered the complaint, the record, plaintiff's testimony, the written submissions of the parties and the applicable law, for the following reasons **IT IS RECOMMENDED** that defendants' motion be GRANTED and that the complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2) because it fails to state a claim for violation of constitutional rights.

## <u>THE RECORD</u>

Plaintiff testified that the claims he makes in this case arise from his former incarceration in WCI in Angie, Louisiana. He said that he is currently incarcerated in Wade and was previously incarcerated in WCI based on a 1999 manslaughter conviction,

2

for which he is serving a sentence of ten years in prison.  He confirmed that his claims in this case are that he fell, injuring his back, neck and shoulder, when a defective chair in which he was sitting in a holding cell at Charity Hospital in New Orleans collapsed on August 8, 2005, and that he received inadequate medical care for those injuries.

Bickham testified that he had not yet received the medical records that I had ordered.  Record Doc. No. 17.  Asked during the telephone conference if the records were accurate in stating that he was already wearing a brace for his back injury on August 2, 2005, he said his lower back was giving him problems before the fall at Charity Hospital but that he hurt it more in the fall.  He said he was given a cervical collar after his accident at Charity Hospital.

Plaintiff stated that he had been transported from WCI to Charity Hospital in New Orleans by WCI officers on August 8, 2005 for a check-up for bladder problems.  He testified that, when he returned from his doctor's appointment, he sat in a chair in the holding cell at the hospital and began to doze off.  He said that when other inmates were called, they got up, the chair broke and he fell because he was handcuffed to the chair.

Bickham testified that he was told by a captain of the guards that the chair had not been attached properly to a rod in a row of other chairs and broke because it was not properly welded or otherwise attached.  Plaintiff stated that he did not know who is responsible for the defective chair, but that the other people who were in the holding cell

had come from Hunt Correctional Center.  In his complaint and his written statement of facts, Bickham stated that Capt. Troy and Lt. Day of Hunt were in charge of the holding area and of all prisoners at Charity Hospital.

Asked what injuries he suffered when he fell, he said, "I re-hurt my back, and I broke my neck and my shoulder was swollen and my left arm was hurting."  He said he had a neck operation on January 25, 2006 at LSU Medical Center in Shreveport for the injuries suffered in the fall.  Bickham stated that he had been transferred to Wade from WCI "after they realized I . . . broke my neck," so he could be near the Shreveport medical center for his surgery.  He confirmed that he used to get his medical treatment at Charity Hospital in New Orleans but could no longer do so because Hurricane Katrina struck shortly after his accident and Charity Hospital in New Orleans was shut down as a result.

Bickham testified that, when he fell on August 8, 2005, the transport officers did not summon medical assistance but instead "they snatched me up off the floor, and I told them my neck was still hurting me."  He said they should not have moved him.  He stated that he was taken to the emergency room at Charity Hospital about three or four hours after the fall and x-rays were taken of his shoulder.  He said he was told that he only had swelling, which would go down.  He said no x-rays of his neck were taken, even though he told them his neck was hurting.  He said he was given Motrin and sent back to WCI.

4

Plaintiff testified that he attended sick call at WCI the next day. He stated that he told the nurse what had happened, but did not see a doctor until the following week. He confirmed the reference in his medical records that he saw Dr. Thomas at WCI on August 15, 2005 and was given Robaxin the next day, which he took for about a week. He also confirmed the notation in the medical records that x-rays were taken of his spine and neck at WCI on August 23, 2005, and they were sent to an outside doctor for review. He said the x-rays were returned to WCI on August 25, 2005 with a finding that something was wrong with his neck. He testified that, on that day, medical personnel at WCI placed him in a cervical collar and sent him to the hospital in an ambulance. He confirmed the indication in the medical records that the x-rays showed fractures at two levels of his cervical spine. He stated that the finding prompted medical personnel at WCI immediately to place him in a neck collar, put him in an ambulance and transport him to Charity Hospital in New Orleans on August 25, 2005.

Plaintiff confirmed that these events occurred just a few days before Hurricane Katrina struck New Orleans. Bickham testified that he arrived at Charity Hospital on August 25, 2005, and stayed there into the next day. He stated that x-rays and CAT scans were taken and he was told that he had two fractures and would be scheduled to see a neurosurgeon. He said he returned to WCI on August 26th. He said that he did not know

when he had been scheduled to see a neurosurgeon, but the hurricane "wiped out" his appointment at Charity Hospital.

He stated that nothing was done for him upon his return to WCI, but he continued to wear a neck collar.  He confirmed the reference in his medical records that a doctor at WCI changed his duty status to "no work" on September 2, 2005 and prescribed medicine for his prostate, ibuprofen for pain and other medication for hypertension.  He confirmed that WCI personnel continued to give him ibuprofen.

Bickham testified that he was shipped from WCI on August 31, 2005 to a prison facility at Tallulah on his way to Wade in North Louisiana, as prison officials tried to get him to a facility that was closer to the LSU Medical Center in Shreveport.  He confirmed a doctor's note on September 29, 2005 in his medical records from Wade that he needed a neurosurgery clinic appointment at LSU-Shreveport.  He confirmed the reference in his medical records that he again was prescribed Robaxin while in Wade and that he first saw a doctor at Wade in November 2005.

Bickham complained about the failure of prison officials to take him to LSU in Shreveport until December 12, 2005.  He said that he was taken to the emergency room at LSU after he fell on that date and that he was given Lortab in the emergency room.

Plaintiff testified that he had neck surgery at LSU in Shreveport on January 25, 2006 and was released from the hospital on January 27, 2006.  He stated that some bones

6

were removed during the surgery and some screws were installed.  He said that he was still recuperating at the time of the telephone conference and was using a walker.  He stated that he was receiving two kinds of medication for pain, along with a muscle relaxer and other medications for his other conditions.  He said he had been taken back to LSU to have his stitches removed around February 6, 2006.  He said he continues to experience pain and cramps in his neck, back and right leg, and must use a walker.

Following the conference, defense counsel provided plaintiff and me with copies of plaintiff's medical records for the end of 2005 and early 2006.  Record Doc. No. 20. The updated medical records reflect the following:

Bickham had an MRI on December 20, 2005 at the LSU neurosurgery clinic, which revealed stenosis at C3-4 and posterior cervical decompression, and was scheduled for surgery, a decompressive laminectomy with lateral mass screws at C3-C5 at LSU conducted on January 25, 2006.  He was discharged on January 27, 2006 with a diagnosis of cervical stenosis and was instructed to wear a cervical collar, engage in light activity only and get physical therapy.  He was admitted into the Wade infirmary upon his return and discharged from there on February 2, 2006 with a duty status of bed rest for one week and to use walker as needed.

Plaintiff went back to LSU on February 6, 2006 for removal of his sutures.  His wound was healing well and he had no new problems.  He was to return on April 18,

7

2006 and was on "no duty" status until that date.  The doctor at Wade imposed the same work restriction until February 13, 2006, when Bickham was permitted to do sedentary chores indoors.  He continued to use a walker and a neck brace.

Bickham was seen at LSU in Shreveport on February 21, 2006, where he reported some neck pain.  The physician noted that this was to be expected for the post-operative period, advised plaintiff to continue wearing the neck collar and scheduled him to return to LSU in May 2006 for followup examination and cervical spine x-rays.

Plaintiff was seen in the Wade Chronic Clinic in March 2006, where he complained of a sore area in his left shoulder.  His duty status remained the same.

In addition, the records submitted to me for in camera review and filed under seal in the court's record for security purposes, Record Doc. No. 21, show that plaintiff was screened on February 27, 2006 for trusty status, work release or placement in Forcht Wade Correctional Center (part of David Wade Correctional Center), but was denied that status because his follow-up medical examination was pending at LSU.

## ANALYSIS

### I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as

amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d

318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed at any time under 28 U.S.C. § 1915(e)(2).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading,[1] and defendants' motion to dismiss on that basis should be granted.

II.     MERE NEGLIGENCE/DEFECTIVE CHAIR

Plaintiff's testimony that he was injured when the chair in which he was sitting collapsed at Charity Hospital at best asserts a negligence claim, not a claim of civil rights violations cognizable under Section 1983. Claims arising from allegedly negligent acts do not give rise to relief under Section 1983.

The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property." <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 347 (1986). In a number of contexts, other courts have determined that allegations amounting to negligence cannot support a Section 1983 claim. <u>Mendoza v. Lynaugh</u>,

---

[1]Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care);  Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence insufficient to support failure to protect claim under Section 1983);  Eason v. Thaler, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); Doe v. Taylor Indep. Sch. Dist., 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

Plaintiff alleges that prison officials are responsible for his fall because the chair had not been attached properly in a row of other chairs and broke because it was not properly welded or otherwise attached.  He claims that he was injured because he was handcuffed to the defective chair.  These are allegations of garden variety tortious conduct that do not rise to the level of violations of the Constitution.  Defendants cannot therefore be liable under Section 1983 for the injuries, if any, resulting from the fall alleged by plaintiff, and this claim should be dismissed as legally frivolous and for failure to state a claim under Section 1983.  If plaintiff wants to pursue tort claims under state law, he is free to do so in state court.

12

III.    MEDICAL CARE

Bickham complains that he received inadequate medical treatment at WCI for injuries received to his back, neck and shoulder when he fell.  Bickham was a convicted prisoner at all relevant times about which he complains.  In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.  The Fifth Circuit reiterated in Hare, 74 F.3d at 649, that the deliberate indifference standard applies to convicted prisoners like Bickham.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the

minimal civilized measure of life's necessities."  <u>Farmer</u>, 511 U.S. at 834 (quotation

omitted).  Thus, plaintiff must show deliberate indifference to his "serious medical

needs" to satisfy this prong.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991); <u>Mendoza</u>, 989

F.2d at 193.

Further, plaintiff must establish that the defendant possessed a culpable state of

mind.  <u>Farmer</u>, 511 U.S. at 834 (citing <u>Wilson</u>, 501 U.S. at 298).  A prison official cannot

be held liable "unless the official knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the

inference."  <u>Id.</u> at 837.

> The Supreme Court has recently reaffirmed that "deliberate indifference"
> is a <u>stringent</u> standard of fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his action.  <u>Board of the</u>
> <u>County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S.
> 397, 117 S.Ct. 1382, 1391 (1997) . . . .  The "deliberate indifference"
> standard permits courts to separate omissions that "amount to an intentional
> choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citations

omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the

appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291.

In this case, plaintiff's allegations negate any inference that defendants acted with

deliberate indifference to his serious medical needs.  Initially, it cannot be concluded

with certainty that the exacerbation of back, neck and shoulder problems Bickham described presented serious medical needs that posed a substantial risk of harm during his incarceration at WCI.  See Lusk v. Dallas County Sheriff's Dep't, No. 3:00-CV-0662L, 2002 WL 31757706, at *4 (N.D. Tex. Nov. 29, 2002) (Lindsay, J.) (herniated disc and degenerative spinal disease not serious medical needs); Nelson v. Rodas, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (Peck, M.J.) (back spasms and pain not a serious medical need); Solomon v. Moore, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2-3 (S.D.N.Y. Apr. 14, 2000) (Duffy, J.) (when plaintiff was able to walk and function normally despite neck, back and groin pains, he had no serious medical needs).

For purposes of this report and recommendation, however, I will assume that Bickham's testimony and written submissions adequately allege a serious medical need for purposes of constitutional analysis.  See, e.g., Rutherford v. Medical Dep't, No. 02-1279, 2003 WL 22207625, at *3 (10th Cir. Sept. 24, 2003) (plaintiff had serious medical need when MRI showed nerve damage and pressure on sciatic nerves, requiring surgery at discs L3, L4, and L5); Weeks v. Chaboudy, 984 F.2d 185, 187 (6th Cir. 1993) (plaintiff who was paralyzed below waist and required wheelchair to move had serious medical need); Palermo v. Correctional Med. Servs. Inc., 133 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001) (Moreno, J.) (plaintiff who suffered from constant, severe back pain that

15

greatly limited his mobility and had ruptured spinal disk, for which surgery had been recommended, had serious medical need).

Even making that assumption, Bickham has alleged facts, confirmed by the medical records, that negate any conceivable inference of deliberate indifference by jail officials. Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention while incarcerated in WCI. Plaintiff was provided with a cervical collar, x-rays, CAT scans, ambulance transport to Charity Hospital once the extent of his injuries was known, an appointment with a neurosurgeon, a change in his duty status to "no work," a transfer to Wade so he could be closer to a functioning medical center, and medications, including the pain relievers Robaxin and Motrin (ibuprofen) and a muscle relaxer.

To the extent that plaintiff may allege a delay in being provided with medical care, including the surgery which was ultimately performed in January 2006, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

First, mere delay in receiving care is not in and of itself a constitutional violation. Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.

Wilson, 501 U.S. at 302. The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Czajka v. Caspari, 995 F.2d 870, 872 (8th Cir. 1993) (no evidence that delay in inmate's orthopedic surgery "'so deviated from professional standards that it amounted to deliberate indifference'") (citation omitted); Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'"); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs)); see also McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992), overruled on other grounds by WMX Tech., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (although "massive herniation" of plaintiff's back "was left essentially untreated . . . and he was forced to endure over seven months of unnecessary pain," evidence provided no basis for finding that prison doctors were deliberately indifferent to plaintiff's medical condition). No such permanent loss resulting from delay has been alleged in this case at this time.

Second, while it is clear from plaintiff's allegations and testimony that he is not satisfied with the speed or effectiveness of his medical care, it is equally clear that the

medical care provided has been constitutionally adequate. Certainly, no finding of deliberate indifference to his medical needs can be made based on this record, which includes frequent attention by medical personnel, diagnostic testing and the provision of medication for his complaints.

Contentions like Bickham's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citing Mendoza, 989 F.2d at 193) (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute the requisite deliberate indifference, even if the treatment was negligently administered); see Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (provision of medical treatment is inconsistent with inference of deliberate indifference).

Accordingly, plaintiff's claims of constitutionally inadequate medical care should be dismissed as legally frivolous and for failure to state a claim under Section 1983.

IV.   <u>QUALIFIED IMMUNITY</u>

To the extent that plaintiff attempts to state a claim against Warden Miller in his individual capacity, Bickham asserts no facts to show that the Warden was personally involved in any of the alleged acts or omissions that would amount to constitutional violations.  "There is no respondeat superior liability under section 1983."  <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Champagne v. Jefferson Parish Sheriff's Ofc.</u>, 188 F.3d 312, 314 (5th Cir. 1999).

Thus, Warden Day cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injuries, if any, were in the Warden's employ.  <u>Id.</u>; <u>Alton v. Texas A&M Univ.</u>, 168 F.3d 196, 200 (5th Cir. 1999); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979).  To hold Warden Miller liable, plaintiff must establish either that he "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the Warden] . . . and the alleged constitutional violation." <u>Douthit v. Jones</u>, 641 F.2d 345, 346 (5th Cir. 1981).  In the instant action, plaintiff has failed to allege either of these two criteria.

Furthermore, the Warden, Capt. Troy and Lt. Day are entitled to qualified immunity for their actions.  Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates

clearly established statutory or constitutional rights of which a reasonable person would have known.  Colston v. Barnhart, 130 F.3d 96, 98 (5th Cir. 1997); Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532-33 (5th Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A qualified immunity defense is analyzed under a two-step process.  Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000); Hare, 135 F.3d at 325. The first step is to determine whether plaintiff has alleged a violation of a clearly established constitutional right.  Jacobs, 228 F.3d at 393; Hare, 135 F.3d at 325.

The second step requires the court to determine whether defendants' conduct was objectively reasonable under existing clearly established law.  Jacobs, 228 F.3d at 393.

Accepting as true the facts alleged by Bickham (and even assuming that any defendant had any personal involvement in plaintiff's fall from a defective chair at Charity Hospital), the allegations of plaintiff's complaint, as amended by his testimony during the telephone conference, fail to establish a violation of a clearly established constitutional right.  As discussed above, plaintiff's allegations amount merely to a negligence claim.  At the time of the accident, there was no clearly established constitutional right to be free from negligent actions by prison officials.

As to plaintiff's claim of inadequate medical care (again even if one assumes that any defendant had any personal involvement in plaintiff's medical care), the right to

constitutionally adequate medical care was a clearly established constitutional right when Bickham was incarcerated at WCI.  However, defendants' conduct was objectively reasonable under existing clearly established law.  As discussed above, defendants were not deliberately indifferent to plaintiff's serious medical needs.  Therefore, Bickham cannot establish that defendants' actions were not objectively reasonable and his claims should be dismissed as legally frivolous and for failure to state a claim under Section 1983.

V.      STATE LAW CLAIMS

Bickham invokes the court's supplemental jurisdiction for his state law tort claims. 28 U.S.C. § 1367(a).  A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3).  The court's determination whether to exercise supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350-51 (1988), and United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)."  Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999).

The statutory considerations are whether

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Although the Fifth Circuit's

"general rule" is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute. Thus, while the district court's dismissal of the [plaintiff's] federal claims provides a powerful reason to choose not to continue to exercise jurisdiction, no single factor is dispositive in this analysis.

Batiste, 179 F.3d at 227 (quotations and citations omitted). The district court must make its decision "in light of the specific circumstances of the case at bar." Id. (quotation and citation omitted).

In the instant case, plaintiff's federal claims against all defendants have been dismissed. The factors of judicial economy, convenience, fairness and comity weigh in favor of declining supplemental jurisdiction over his state law tort claims. First, as noted, no federal claims remain in the case. Second, comity favors dismissing the state law claims and letting the state court handle them (if plaintiff decides to pursue them)

22

because of Louisiana's interest in adjudicating the claims of its citizens brought under its laws.  Third, because the state law claims have not been addressed at all in this court and this court is not particularly familiar with them, judicial economy does not weigh in favor of maintaining jurisdiction.  Finally, fairness and convenience are equal whether the claim is brought in state or federal court.

"Unadjudicated pendant [sic] state law claims must be dismissed without prejudice to allow the plaintiff to refile in state court when a district court dismisses the federal claims serving as the basis for its jurisdiction and elects not to exercise supplemental jurisdiction over the state law claims."  Brown v. Mississippi Valley State Univ., 311 F.3d 328, 334 n.6 (5th Cir. 2002).  Accordingly, Bickham's state law tort claims should be dismissed without prejudice.

<u>CONCLUSION</u>

For all of the foregoing reasons, plaintiff's complaints in this case about his fall and his medical care fail to state a claim for violation of his constitutional rights at this time sufficient to obtain relief under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that defendants' motion be GRANTED and that plaintiff's claims pursuant to 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2).

**IT IS FURTHER RECOMMENDED** that plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___22nd__ day of August, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

24